## PETERSON DUNN *v.* E. J. NICHOLS and J. JONES.

The fact that the older writs of Ven. Ex. are affected by the Stay Law, in a case where the property levied on was sold by writs not so affected—does not change the rule that the proceeds of sales by a Sheriff are to be applied to the oldest execution in his hands.

The Fi. Fa. clause attached to a writ of Ven. Ex. has not the force of an. alias Fi. Fa., but is dependent upon the result of the sale under the Ven. Ex.; when, if such sale be insufficient for the purposes of the execution, it for the first time becomes operative.

Where personal property was sold under a junior execution before it was known what would be the result of a sale under a Ven. Ex. of older date, *Held* that its proceeds were appropriated to such execution.

(*Allemong* v. *Allison*, 1 Hawks 325, cited and approved.)

RETURN by a Sheriff asking advice as to the application of money, made to *Watts, J.* at Fall Term 1868 of the Superior Court of WAKE.

The return set forth that at Fall Term 1867 of that Court the defendants had severally obtained judgments against one Page, and executions were issued upon them returnable to Spring Term 1868, and were levied upon land. From the last term a writ of Ven. Ex. was issued with the usual Fi. Fa. clause, returnable to Fall Term 1868.

At February Term 1868 of the County Court of Wake the plaintiff obtained judgment against Page, and an execution was issued thereupon returnable to May Term. This execution was levied on certain personal property, and also upon the land metioned above, and was returned. At May Term a Ven. Ex. was issued for both the personal and real estate.

All of the above orders of sale were delivered by the former Sheriff to the present Sheriff, who qualified in July 1868, and. the former Sheriff also authorized his successor to sell the personal estate that had been levied upon as above. There-upon the present Sheriff sold the personal property under the Ven. Ex. from the County Court, in September 1868, pro-cliaming that he would apply the proceeds as the law might.

direct. On Monday of October Court he also sold the land, making the same proclamation as above, as to its proceeds.

The debts of the defendants were within the operation of the Act and Ordinance known as the Stay Laws, and the Sheriff states that he would not have made sale under the writs in these cases. The plaintiff's debt was a *new* one, unaffected by these laws, and the Sheriff had a right to sell and did sell the property of Page under the Ven. Ex. in that case.

The Sheriff brings the money, which is not enough to satisfy all of the debts, into Court, and asks the instruction of the Court as to its application to the several writs in his hands.

Upon argument by counsel for the plaintiff and the defendants respectively, the Court ordered the proceeds of the real estate to be applied to the writs in favor of the defendants, *pro rata;* and the proceeds of the sale of the personalty to be applied to the writ in favor of the plaintiff.

From this order both parties appealed.

*Rogers & Batchelor*, for the plaintiff.

The Sheriff actually sold under the writ from the County Court, and this was an application. *Yarbro v. State Bank,* 2 Dev. 23; *Washington v. Saunders Ib.* 343 ; *Hill v. Child,* 3 Dev. 265. The Stay Law preserves *the lien* of the older executions, but does not prevent sales under junior executions. That lien is administered against the purchaser and not against the proceeds of the sale. *Ricks v. Blount,* 4 Dev. 128; *Alexander v. Springs,* 5 Ire. 475.

As regards the personalty,—it was sold by the former Sheriff, through the present as his agent. There was no process in the hands of the present Sheriff at the time of its sale, which warrants the defendants in claiming the proceeds of the personalty. *Saunders v. Rogers,* 3 Dev. 38 ; *Barden v. McKenzie,* 4 Hawks 279; *Allemong v. Allison* 1 Hawks 325; *Cannady v. Nuttall,* 2 Ire. Eq. 265; *Badham v. Cox,* 12 Ire. 456.

*Phillips & Battle, contra.*

The policy of the Stay Law was to favor the debtor, and

not the junior creditor. In a case like the present, where the existence of *new* debts prevents the debtor from keeping his property, and he actually loses its possession, the Stay Law has no operation. What was meant as a shield for the debtor cannot be turned into a sword for a junior creditor. The policy of the law is that purchasers at Sheriffs' sales shall get good titles, therefore *the lien* provided by the Stay Law is to be administered against *the proceeds*.

The reason of the thing in *Allemong* v. *Allison* and the cases which follow it, is that so long as it is not known whether the Ven. Ex. will produce enough to satisfy the execution, the Fi. Fa. clause is to have no operation. But if before money be applied to junior executions (as here) it be found (as here) that the Ven. Ex. under a senior execution will not satisfy that execution, the Fi. Fa. clause loses its dormant character. That is according to the analogies of the English law as stated in *Allemong* v. *Allison*, and is not opposed to any North Carolina case.

DICK, J. The defendants, by the levy of their executions upon the real estate of the debtor Page, acquired a lien, which was continued by the subsequent writs of *ven. ex.*, to the day of sale. The fact that the Sheriff was prevented from making sale under these writs, by the Stay Law, does not affect the lien of the defendants. Although he made sale under the junior *ven. ex*, of the plaintiff, it is expressly stated in the return of the Sheriff, that he made no appropriation of the proceeds of sale, but referred that question to the Court. It is well settled that where the conduct of the parties is *bona fide*, the execution of the oldest *teste* is entitled to priority. The defendants have done their duty faithfully and diligently, and they lost none of their legal rights by the failure of the Sheriff to sell under their process.

The special *fi. fa.* clause, in the writs of *ven. ex.*, of the defendants does not give them priority as to the personal property, which was not levied upon by their executions. This special *fi. fa.* has not the force and effect of an alias *fi. fa.*—but is depend-

ent upon the result of the sale under the *ven. ex.*, to which it is annexed. If such sale is insufficient to satisfy the debt, then for the first time the special *fi. fa.* becomes operative— *Allemong* v. *Allison*, 1 Hawks 325.

The plaintiff's execution was levied upon the personal property, and the sale was made before the land was sold and before the special *fi. fa.* had any vitality, and the law appropriated the proceeds to the plaintiff's debt. The judgment appealed from by the plaintiff is affirmed. The judgment appealed from by the defendant, is affirmed.

As both parties appealed, the Clerk of this Court will state two cases on his docket, and tax the costs against the appellant in each case. Let this be certified.

PER CURIAM.                                        Judgment affirmed.